```
              IN THE UNITED STATES DISTRICT COURT
             FOR THE EASTERN DISTRICT OF VIRGINIA
                        Richmond Division
```

DANIEL TEKLE,

    Plaintiff,

v.                                                             Civil Action No. 3:19CV559

MS. DAWALT, et al.,

    Defendants.

## MEMORANDUM OPINION

Daniel Tekle, a Virginia inmate proceeding pro se, filed this 42 U.S.C. § 1983 action.[1] The matter is before the Court on the DEFENDANTS' MOTION FOR SUMMARY JUDGMENT filed by Defendants Laymon and DaWalt. Defendants assert that Tekle's claims should be dismissed because he failed to exhaust his administrative remedies. For the reasons set forth below, the Motion for Summary Judgment (ECF No. 30) will be granted.

### I. SUMMARY OF ALLEGATIONS AND CLAIMS

Before he was incarcered in the Virginia Department of Corrections ("VDOC"), Tekle obtained advanced degrees from a university in Ethiopia. (ECF No. 1, at 6.) Nevertheless, because VDOC personnel were unsatisfied with the documents with which Tekle used to verify his previous educational achievements, he was

---

[1] The matter is proceeding on Tekle's Complaint. (ECF No. 1.) The Court corrects the capitalization, spelling, and punctuation in the quotations from the parties' submissions.

required to take GED classes. (Id.) At some point, Tekle's GED teacher told him he was not on her class list and asked Tekle to leave his class. (Id.) When Tekle was reenrolled in his GED classes, that class schedule conflicted with his work schedule with Enterprise, his prison employer. (Id.) Defendants DaWalt and Laymon placed an institutional charge against Tekle for refusing to attend his GED class. (Id.)

Eventually, on July 11, 2018, Defendant DeWalt stated that Tekle needed to stop working at Enterprise and take GED classes. (Id. at 7.) Although other inmates were allowed to work at Enterprise and take GED classes, Tekle was denied this opportunity. (Id.)

Based on the foregoing allegations, Tekle contends that DaWalt and Laymon conspired to deny him his constitutional rights under the Equal Protection Clause of the Fourteenth Amendment. Tekle contends that:

Claim One    Defendants DaWalt and Laymon violated his constitutional rights when they refused to accept his Ethiopian educational credentials while accepting the educational credential of inmates the United States and from other foreign countries.

## II. STANDARD FOR SUMMARY JUDGMENT

Summary judgment must be rendered "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment bears the responsibility to inform the court of the basis for the motion, and to identify the parts of the record which demonstrate the absence of a genuine issue of material fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the pleadings, depositions, answers to interrogatories, and admissions on file." Id. at 324 (internal quotation marks omitted). When the motion is properly supported, the nonmoving party must go beyond the pleadings and, by citing affidavits or "'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" Id. (quoting former Fed. R. Civ. P. 56(c) and 56(e) (1986)).

In reviewing a summary judgment motion, the court "must draw all justifiable inferences in favor of the nonmoving party." United States v. Carolina Transformer Co., 978 F.2d 832, 835 (4th Cir. 1992) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986)). However, a mere scintilla of evidence will not preclude summary judgment. Anderson, 477 U.S. at 251 (citing

3

Improvement Co. v. Munson, 81 U.S. (14 Wall.) 442, 448 (1871)). "'[T]here is a preliminary question for the judge, not whether there is literally no evidence, but whether there is any upon which a jury could properly proceed to find a verdict for the party . . . upon whom the onus of proof is imposed.'" Id. (quoting Munson, 81 U.S. at 448). Additionally, "'Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment.'" Forsyth v. Barr, 19 F.3d 1527, 1537 (5th Cir. 1994) (quoting Skotak v. Tenneco Resins, Inc., 953 F.2d 909, 915 n.7 (5th Cir. 1992)); see Fed. R. Civ. P. 56(c)(3) ("The court need consider only the cited materials . . . .").

Defendants asks the Court to dismiss Tekle's claim because Tekle failed to exhaust his administrative remedies as required by 42 U.S.C. § 1997e(a). Because the exhaustion of administrative remedies is an affirmative defense, Defendants bear the burden of pleading and proving lack of exhaustion. Jones v. Bock, 549 U.S. 199, 216 (2007). In support of their Motion for Summary Judgment, Defendants submit: (1) an affidavit from R. Brown, the Grievance Coordinator at Haynesville Correctional Center ("HCC") Center ("Brown Aff.," ECF No. 31-1, at 1-7); (2) a copy of Operating Procedure 866.1, Offender Grievance Procedure ("Operating Procedure § 866.1," ECF No. 31-1, at 8-35); and, (3) copies of

4

Informal Complaints and Grievances submitted by Tekle (ECF No. 31-1, at 36-44).

Tekle has responded by submitting a MEMORANDUM AGAINST THE ARGUMENT OF DEFENDANTS AND REQUESTING A MOTION FOR SUMMARY JUDGMENT TO GRANT ("Tekle's Response," ECF No. 33), and has sworn that the facts stated therein "are true to the best of his information and belief." (ECF No. 33, at 28.) A similar verification appears at the end of Tekle's Complaint. (ECF No. 1, at 14.) As explained below, these statements do not transform Tekle's Response or the Complaint into admissible evidence.

Tekle's verification is substantially similar to that analyzed in Walker v. Tyler County Commission, 11 F. App'x 270, 274 (4th Cir. 2001).[2] In Walker, the United States Court of Appeals for the Fourth Circuit did not permit such verification to transform the complaint into an affidavit because the complaint did not indicate which factual allegations were based on the plaintiffs' personal knowledge. Id. at 274 (explaining that former Federal Rule of Civil Procedure 56(e) required an affidavit opposing a motion for summary judgment to be based on personal

---

[2] The verification at issue in Walker states: "[T]he facts contained within the attached pleading [are] true, except insofar as they are therein stated to be upon information and belief, and insofar as they are therein stated to be upon information and belief, [Plaintiff] believes them to be true." Walker, 11 F. App'x at 274. Nevertheless, as is the case here, "[t]he factual allegations in the complaint do not indicate which, if any, are based on personal knowledge." Id.

5

knowledge). The Fourth Circuit regarded the complaint as resting on "mere pleading allegations." Id.

Additionally, the Court repeatedly informed Tekle that:

> [T]he Court will not consider as evidence in opposition to any motion for summary judgment a memorandum of law and facts that is sworn to under penalty of perjury. Rather, any verified allegations must be set forth in a separate document title "Affidavit" or "Sworn Statement," and reflect that the sworn statements of fact are made on personal knowledge and the affiant is competent to testify on the matters stated therein. See Fed. R. Civ. P. 56(c)(4).

(ECF No. 7, at 2; ECF No. 8, at 1-2; ECF No. 17, at 2.) The Court will consider the documents attached to Tekle's Response in assessing the Motion for Summary Judgment.

In light of the foregoing principles and submissions, the following facts are established for the purposes of the Motion for Summary Judgment. All permissible inferences are drawn in favor of Tekle.

### III. SUMMARY OF RELEVANT FACTS

#### A. Grievance Procedure at the Virginia Department of Corrections ("VDOC")

Operating Procedure § 866.1, Offender Grievance Procedure, is the mechanism used to resolve inmate complaints in the VDOC. (Brown Aff. ¶ 4.) Offenders receive an orientation to the grievance procedure system when they arrive at a VDOC facility. (Operating Procedure § 866.1.IV.A.4.) Operating Procedure § 866.1 requires that, before submitting a formal grievance, the inmate

6

must demonstrate that he or she has made a good faith effort to resolve the grievance informally through the procedures available at the institution to secure institutional services or resolve complaints. (Id. § 866.1.V.A.) Generally, a good faith effort requires the inmate to submit an informal complaint form. (Id. § 866.1.V.A.1-2.) If the informal resolution effort fails, the inmate must initiate a regular grievance by filling out the standard "Regular Grievance" form. (Id. § 866.1.VI.A.2.)

"The original Regular Grievance (no photocopies or carbon copies) should be submitted by the offender through the facility mail system to the Facility Unit Head's Office for processing by the Institutional Ombudsman/Grievance Coordinator." (Id. § 866.1.VI.A.2.b.) The offender must attach to the regular grievance a copy of the informal complaint or other documentation demonstrating their attempt to informally resolve the issue. (Id. § 866.1.VI.A.2.a.) Additionally, "[i]f 15 calendar days have expired from the date the Informal Complaint was logged without the offender receiving a response, the offender may submit a Grievance on the issue and attach the Informal Complaint receipt as documentation of the attempt to resolve the issue informally." (Id. § 866.1.V.A.3.) A formal grievance must be filed within thirty days from the date of the incident or occurrence, or the discovery of the incident or occurrence, except in instances beyond the offender's control. (Id. § 866.1.VI.A.1.)

7

### 1. Grievance Intake Procedure

Before they review the substance of a grievance, prison officials conduct an "intake" review of the grievance to assure that it meets the published criteria for acceptance. (Id. § 866.1.VI.B.) A grievance meeting the criteria for acceptance is logged in on the day it is received, and a "Grievance Receipt" is issued to the inmate within two days. (Id. § 866.1.VI.B.3.) If the grievance does not meet the criteria for acceptance, prison officials complete the "Intake" section of the grievance and return the grievance to the inmate within two working days. (Id. § 866.1.VI.B.4.) If the inmate desires a review of the intake decision, he or she must send the grievance form to the Regional Ombudsman within five calendar days of receipt. (Id. § 866.1.VI.B.5.) "If a Regular Grievance does not meet the criteria for acceptance and review by the Regional Ombudsman does not result in intake into the grievance process, the issue must be resubmitted in accordance with the criteria for acceptance." (Id. § 866.1.IV.O(b).) Finally, "[t]he exhaustion of remedies requirement will be met only when the Regular Grievance has been accepted into the grievance process and appealed through the highest eligible level without satisfactory resolution of the issue." (Id.)

8

### 2. Grievance Appeals

Up to three levels of review exist for a regular grievance. (Id. § 866.1.VI.C.) The Facility Unit Head of the facility in which the offender is confined is responsible for Level I review. (Id. § 866.1.VI.C.1.) If the offender is dissatisfied with the determination at Level I, he or she may appeal the decision to Level II, a review of which is conducted by the Regional Administrator, the Health Services Director, the Superintendent for Education, or the Chief of Operations for Offender Management Services. (Id. § 866.1.VI.C.2.) The Level II response informs the offender whether he or she "qualifies for" an appeal to Level III. (Id. § 866.1.VI.C.2.g.)

### B. Tekle's Efforts At Exhaustion With Respect To His Present Claim

On May 29, 2018, Tekle submitted an Informal Complaint wherein he complained that the Department of Education ("DOE") principal and her assistant had enrolled him in GED classes even though he had a BA in accounting, an MBA in Business Administration, and a certificate of completion from high school. (ECF No. 31-1, at 36.) On June 13, 2018, Laymon responded, "as we have discussed in the past you must pass [high] school fully to the 12th grade. . . . You must complete school & come to school to keep working at a job." (Id.)

On August 6, 2018, Tekle submitted a regular grievance wherein he complained that Laymon was prejudiced against him and had refused to accept his documentation reflecting that he had completed high school. (Brown Aff. ¶ 13.) Tekle further complained: (a) Laymon had removed him from the GED classes in which she had enrolled him without his knowledge; and (b) then gave him an institutional charge for not attending the class. (Id.) Grievance Coordinator Brown rejected the grievance at intake because Tekle had filed it after thirty (30) day period that gave rise to the incident. (Id.)

On August 20, 2018, Tekle submitted an Informal Complaint wherein he again complained that Laymon had enrolled him in GED classes even though he had advanced degrees and proof that he had graduated high school. (ECF No. 31-1, at 37.) On September 5, 2018, Laymon responded that Tekle had not graduated high school and must attend classes. (Id.)

On September 17, 2018, Tekle submitted a regular grievance wherein he stated that Laymon and DaWalt were prejudiced against him because he had submitted all of the necessary documentation to prove that he had graduated high school. (Id. at 38.) Nevertheless, they had forced him to enroll in GED classes. (Id.) Tekle further complained that DaWalt discriminated against him because she accepted documentation from inmates with U.S. degrees. (Id.) Lastly, Tekle asserted that, while he was attending classes,

10

his name was removed from the roster without his knowledge and he received an infraction for refusing to attend classes. (Id.) The grievance was rejected at intake because Tekle failed to attach documentation to his grievance reflecting that he had utilized the informal process to resolve the complaint. (Id. at 39.)

On September 19, 2018, Tekle resubmitted the grievance with the informal complaint attached. (Id. at 40.) The grievance was rejected at intake because it was submitted outside of the thirty (30) day filing period. (Id. at 41.) The Grievance Coordinator noted that the incident "started back in May." (Id.)

On May 6, 2019, Tekle submitted an Informal Complaint wherein he complained that DaWalt and Laymon discriminated against him and violated his constitutional rights when they enrolled him in GED classes even though they knew he had a high school diploma and several advanced degrees. (Id. at 44.) Tekle further complained that DaWalt and Laymon were prejudiced against him. (Id.) Laymon responded that, according to the educational standards in effect in the United States, Tekle was required to complete the 12th grade, which he had not done. (Id.) Laymon also stated that she had explained this precept to Tekle many times and no one was prejudiced against him. (Id.)

On May 29, 2019, Tekle submitted a grievance wherein he stated that he had completed the 12th grade and did not need to GED classes. (Brown Aff. ¶ 22.) Tekle further stated that he had

11

submitted proof that he had completed the 12th grade, but his documentation was not accepted as adequate proof. (Id.) Lastly, Tekle stated that the VDOC officials were accepting U.S. records regarding his completion of the 12th grade, but were not accepting his records. (Id.) The grievance coordinator rejected the grievance because it was filed beyond the thirty (30) day filing period. (Id.)

## IV. ANALYSIS

The pertinent statute provides: "No action shall be brought with respect to prison conditions under [42 U.S.C. § 1983] or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). This language "naturally requires a prisoner to exhaust the grievance procedures offered, whether or not the possible responses cover the specific relief the prisoner demands." Booth v. Churner, 532 U.S. 731, 738 (2001). Generally, in order to satisfy the exhaustion requirement, an aggrieved party must file a grievance raising the claim and pursue the grievance through all available levels of appeal, prior to bringing his or her action to court. See Woodford v. Ngo, 548 U.S. 81, 90 (2006). The Supreme Court has instructed that section 1997e(a) "requires proper exhaustion." Id. at 93. The Supreme Court explained that "[p]roper exhaustion demands compliance with

an agency's deadlines and other critical procedural rules," id. at 90, "so that the agency addresses the issues on the merits." Id. (quoting Pozo v. McCaughtry, 286 F.3d 1022, 1024 (7th Cir. 2002)). The applicable prison rules "define the boundaries of proper exhaustion." Jones v. Bock, 549 U.S. 199, 218 (2007). Exhaustion is mandatory, and courts lack discretion to waive the exhaustion requirement. Porter v. Nussle, 534 U.S. 516, 524 (2002).

Tekle failed to comply with the VDOC's procedural rules by failing to timely file a regular grievance concerning his claims. As such, his complaint could not be addressed on its merits as is required for proper exhaustion. Woodford, 548 U.S. at 90 (emphasis in original) (explaining that an inmate must use administrative remedies "properly (so that the agency addresses the issues on the merits)."). The record therefore establishes that Tekle failed to comply with 42 U.S.C. § 1997e(a) and his claim is not properly exhausted.[3] Accordingly, the Motion for Summary Judgment (ECF No. 30) will be granted. However, the record suggests that the defendants and those processing Tekle's grievances may not be acting in accord with the Equal Protection Clause of the Fourteenth

---

[3] "[A]n administrative remedy is not considered to have been available if a prisoner, through no fault of his own, was prevented from availing himself of it." Moore v. Bennette, 517 F.3d 717, 725 (4th Cir. 2008) (citations omitted). Tekle fails to demonstrate that he was prevented from timely pursing an appropriate grievance.

Amendment. Therefore, Tekle's claim and the action will be dismissed without prejudice.

The Clerk is directed to send a copy of this Memorandum Opinion to Tekle and counsel of record.

It is so ORDERED.

/s/ REP
Robert E. Payne
Senior United States District Judge

Richmond, Virginia
Date: November 17, 2021